IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MICHAEL HESS, et al., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-0505-CV-W-HFS |
| ) | |
| CITIBANK (SOUTH DAKOTA), N.A., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

Plaintiff Michael Hess brings this suit as the personal representative of the estate of George E. Hess and purportedly on behalf of all others similarly situated. George Hess (deceased) was the holder of a Visa credit card issued by defendant Citibank (South Dakota), N.A. Plaintiff's amended class action complaint alleges that Citibank systematically and illegally "swept" credit balances from George Hess' account and other cardholders' accounts after 60 days of account inactivity. The amended complaint alleges claims for violations of the Truth in Lending Act, conversion, breach of contract, breach of implied covenant of good faith, fraud, money had and received, and unjust enrichment. Prior to answering, Citibank filed an early motion for summary judgment, arguing that plaintiff cannot establish a requisite element of each of his claims – the existence of a credit balance due and owing. Thus the premise of any alleged misapplication of credit balances would be missing. For the reasons set forth below, Citibank's motion for summary judgment will be granted.[1]

---

[1] One month after plaintiff filed his opposition to summary judgment, he filed a request for oral argument on the motion. Plaintiff's request contains additional arguments and, for practical purposes, constitutes an unauthorized surreply in opposition to summary judgment. Nonetheless, the court considered the additional arguments in its analysis. After further consideration of the facts and the law, the court has determined oral argument is unnecessary to

**I.     Summary Judgment Standards**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464, 467 (1962). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party, and it must give that party the benefit of all reasonable inferences to be drawn from the evidence. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Luigino's, Inc. v. Stouffer Corp., 170 F.3d 827, 830 (8th Cir. 1999).

A party seeking summary judgment bears the initial burden of demonstrating to the court that an essential element of the non-moving party's case is lacking. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The burden then shifts to the non-moving party to come forward with sufficient evidence to demonstrate that there is a factual controversy as to that element, or to explain why such evidence is not currently available. Id.; Fed. R. Civ. P. 56(e). In resisting summary judgment, the non-moving party may not rest on the allegations in its pleadings, but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); 10B Charles Alan Wright et al., Federal Practice and Procedure §§ 2739, 2727 (3d ed. 1998). In other words, the non-movant must do more than merely assert that there is a genuine issue of material fact. In this case, as will appear, we simply have legal questions, largely issues of

---

the resolution of the summary judgment motion.

Missouri law and practice.

## II.     Background

George E. Hess was the holder of a Citibank Visa credit card. At the time of his death on August 29, 1998, George Hess' Citibank credit card debt was $889.58. On October 16, 1998, a probate estate was opened for George Hess in Jackson County, Missouri. Plaintiff Michael Hess, son of George Hess, is the personal representative of the George Hess' probate estate (the Hess Estate). On February 24, 1999, Citibank filed a claim for $889.58 in the Hess Estate. Almost two years later, on or about December 11, 2000, the Hess Estate paid Citibank $974.96.[2] Payment was in the form of a check dated December 6, 2000; it was signed by Michael Hess and referenced the Citibank account number on the memo line.

According to the theory of plaintiff's case, in early 2001 Citibank would have made a book entry deleting any credit balance that existed. If there was truly a credit balance I shall assume this occurred. Citibank now contends that by the time of the Hess Estates' payment, accrued interest on George Hess' outstanding balance had increased the total amount owed to Citibank to an amount greater than the $974.96 paid by the Hess Estate.[3] The September 10, 1998 Citibank statement for George Hess' account reflects the applicable interest rate for that statement period was 18.90%. It

---

[2]Plaintiff contends that the Hess Estate inadvertently and mistakenly paid Citibank $974.96 for its $889.58 probate claim, creating a positive credit balance of $85.38. From appearances one might suppose the overpayment of the previous balance was some form of compensation for late payment. This question of intent is presently speculative and is of course not dispositive.

[3]In support of its motion, Citibank submitted the affidavit of Charles E. Finch, a principal in a local accounting firm. Finch's affidavit and three attached appendices provide calculations for interest accrued on the account based on the Card Agreement and interest accrued based on the statutory interest rate for probate claims. There is no contention that interest entitlement was periodically posted.

3

is not clear whether George Hess' account was subject to a fixed annual percentage rate or a variable annual percentage rate. Applying the variable annual percentage rate methodology provided in the Citibank Card Agreement,[4] the amount of interest that accrued on George Hess' account between February 24, 1999 and December 10, 2000[5] was $357.43. Thus, the sum of the initial obligation and the accrued interest totaled $1,247.01.

Applying a fixed annual percentage rate of 18.90% (the rate reflected on the September 10, 1998 statement), the amount of interest incurred on George Hess' account between February 24, 1999 and December 10, 2000 was $358.58. Under this method, the sum of the initial debt and the accrued interest totaled $1,246.16.

Applying the interest rate payable on probate claims and using the statutory simple interest rate of 9% per annum, as provided by Mo. Rev. Stat. § 408.020, the amount of interest incurred on George Hess' account between February 24, 1999 and December 10, 2000 was $143.89. Under this method, the sum of the initial debt and the accrued interest totaled $1,033.47.

Under all three methods, the balance owed on George Hess' account as of December 10, 2000 would be greater that the $974.96 paid by the Hess Estate. This assumes that Citibank's claim for some $890 is not somehow frozen – the legal question that needs resolution.

## III.    Analysis

---

[4]In explaining the calculation of the variable annual percentage rage, the Card Agreement states: "If the annual percentage rate for purchases is based on the quarterly U.S. Prime Rate plus a margin, we will calculate the rate by adding the margin that appears on the folder containing the card to the U.S. Prime Rate published in the Wall Street Journal on the third Tuesday of March, June, September, and December of each year."

[5]During this time period, the variable annual percentage rate ranged from 18.15% to 19.90%. Finch Aff., App. 1.

Plaintiff's amended complaint alleges that Citibank illegally retained and "swept" credit balances from card holders accounts into Citibank's own accounts after 60 days of inactivity. The amended complaint sets forth seven claims: (1) violation of the Truth in Lending Act (15 U.S.C. § 1666d; 12 C.F.R. § 226.11);[6] (2) conversion; (3) breach of contract, (4) breach of implied covenant of good faith, (5) fraud, (6) money had and received, and (7) unjust enrichment. Citibank asserts that it is entitled to summary judgment because plaintiff cannot prove an essential element of all of his claims – that Citibank retained a credit balance due and owing on George Hess' account.[7]

### A.   Interest Pursuant to Card Agreement

The Card Agreement for George Hess' account states that finance charges "continue to accrue until payment in full is credited to your account." Two forms of interest are explained in the Card Agreement – an annual percentage rate (fixed) and a variable annual percentage rate. It is not clear which form of interest applies to George Hess' account. If a variable annual percentage rate applied, the accrued interest between February 24, 1999 and December 10, 2000 was $347.43, bringing the total owed to $1,247.01. The September 10, 1998 statement (the first one following George Hess' death) reflected an interest rate of 18.90%. If a fixed annual percentage rate of 18.90% applied, the accrued interest between February 24, 1999 and December 10, 2000 was $356.58, bringing the total owed to $1,246.16.

Plaintiff argues that Citibank is not entitled to interest under the Card Agreement because

---

[6] In short, this provision requires that, in consumer credit transactions, the creditor must make a good faith effort to refund to the consumer any credit balance of more than $1 remaining in the account for more than 6 months.

[7] It may be pertinent for counsel to recognize that if the alleged sweeping of credit balances does occur and is illegal – matters immaterial to this ruling – the Hess claim (if it exists) could be so atypical as to disqualify plaintiff as a class representative.

5

it did not send account statements reflecting such interest, as required by the Truth in Lending Act and its implementing provisions. Regulation Z requires that "[t]he creditor shall furnish the consumer with a periodic statement" that discloses certain information, including finance charges. 12 C.F.R. § 226.7. Citibank argues that it was not required to keep sending statements during the pendency of George Hess' probate proceedings. It contends that once a creditor receives notice of a consumer's death, the creditor must rely on the probate court (Mo. Rev. Stat. § 473.360), as opposed to continuing to seek payment through invoicing a deceased consumer or standard collection means.

Citibank also argues that Regulation Z does not require creditors to continue sending periodic statements following a consumer's death. Regulation Z expressly states that periodic statements be sent to "the consumer." "Consumer" means "a cardholder or natural person to whom consumer credit is offered or extended." 12 C.F.R. § 226.2(11). "Cardholder" is defined as "a natural person to whom a credit card is issued for consumer credit purposes, or a natural person who has agreed with the card issuer to pay consumer credit obligations arising from the issuance of a card to another natural person." 12 C.F.R. § 226.2(8). Citibank argues that after it received notice of the death of George Hess, the cardholder, its obligation to send periodic statements to him ceased. The court agrees. Plaintiff argues that Citibank should have sent the statements to the Hess Estate or to the personal representative, but he cites no authority for this argument. Based on the plain language of the Regulation Z definitions, the court concludes that the Hess Estate and the personal representative do not fall within the definition of "consumer" or "cardholder," so Citibank had no

6

obligation to send statements to them.[8]

In sum, the court finds that Citibank was entitled to interest under the Card Agreement,[9] and that TILA and Regulation Z did not require Citibank to continue to send statements after George Hess' death as a prerequisite to seeking such interest. Because the accrued interest under the Card Agreement and the initial balance of $889.58 total more than the December 2000 payment of $974.96, there was no credit balance entitlement at the time the alleged sweeping of the books may have occurred.

### B.  Statutory Interest on Probate Claim

Citibank argues an alternate theory that it is entitled to statutory interest on its probate claim. As noted, on February 24, 1999, Citibank filed a probate claim in the Hess Estate for $889.58.

---

[8]In the request for oral argument, plaintiff also argues that TILA requires the creditor to send statements to the "obligor." A provision of TILA provides: "The creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or to which a finance charge is imposed, a statement . . . ." 12 U.S.C. § 1637(b). Plaintiff contends that the Hess Estate and the personal representative qualify as "obligors." Again, however, plaintiff does not cite any authority for his contention. The term "obligor" does not appear to be defined in the statutory scheme, and the court will not guess at the definition. Moreover, because the parallel provision of Regulation Z (12 C.F.R. § 226.7) refers to "consumer," it seems unlikely that the term "obligor" should be construed more expansively.

[9]The court has stayed all proceedings in this case pending a ruling on the summary judgment motion. Subsequently, plaintiff filed a motion for limited relief from the discovery stay. Because the court finds that the discovery plaintiff seeks is not necessary to the summary judgment decision, the motion will be denied. However, the court will address one issue raised in that motion. In an affidavit attached to the motion, former Citibank employee Albert Z. Mellon asserts that it was Citibank's policy is not to charge or request interest, whether pursuant to a card agreement or state probate law, on outstanding account balances after a cardholder's death. The court notes that any such policy would have no bearing or effect on any legal entitlement Citibank may have to such interest. Plaintiff makes no argument that the legal duty to pay interest somehow expires automatically on the death of the consumer. While I can imagine a theory that the probate code supercedes a contractual obligation, no such argument has been advanced by plaintiff.

7

Citibank argues that as a creditor in probate, it is entitled to receive prejudgment interest at the statutory rate from the date demand for payment is made until the claim is paid, and cites Whalen, Murphy, Reid, Danis, Garvin & Tobben v. Estate of Roberts, 711 S.W.2d 587, 589-90 (Mo. Ct. App. 1986). The relevant statute provides: "The order allowing the claim has the effect of a judgment and bears interest at the legal rate, unless the claim provides for a different rate[10] in which case the judgment shall be rendered accordingly." Mo. Rev. Stat. § 473.403.1. In Missouri, the legal rate of interest is 9%. Mo. Rev. Stat § 408.020. Applying the Missouri statutory rate of 9% interest, the accrued interest between February 24, 1999 and December 10, 2000 would be $143.89, bringing the total owed to $1,033.47. Because this amount also exceeds the $974.96 payment, Citibank argues that there was no overpayment and no credit balance.

Plaintiff contends that the Citibank is judicially estopped from seeking interest on its probate claim. "The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quoting 18 Moore's Federal Practice § 134.30 (3d ed. 2000)). The purpose of judicial estoppel is to protect the integrity of the judicial process "by prohibiting parties from deliberately changing positions according to the exigencies of the moment." Id. at 749. Plaintiff argues that "Citibank's prior position before the probate court that Hess only owed $889.58 is clearly inconsistent with Citibank's current claim for post-mortem interest above and beyond the $889.58." The court disagrees. Plaintiff seems to be saying that because Citibank did not specifically request interest on the probate form that it waived its right to statutory interest

---

[10]In this case the "billing statement" attached to the claim shows the pertinent interest rate that exceeded 9%.

on that claim. Plaintiff has not cited any authority in support of this argument. Because interest on probate claims is expressly provided for by statute, Citibank probably did not have to request interest on the probate claim form. Moreover the contractual interest claim was implicit in the attached statement. Because the court finds that Citibank did not take inconsistent positions in this court and the probate court, judicial estoppel does not bar Citibank from seeking interest on its probate claim.

In his request for oral argument, plaintiff argues – for the first time – that any interest on a probate claim runs from the date of its allowance, not from the date the claim was made. Because the argument was made after summary judgment briefing was completed, Citibank has not had an opportunity to address this contention. If plaintiff is correct, the amount of statutory interest on Citibank's probate claim would be in doubt. This issue is complicated by the fact that Citibank's claim has not been shown to have been "allowed" by any order from the probate court. Instead, the personal representative simply paid the claim, apparently pursuant to Mo. Rev. Stat § 473.403.2. It will be assumed arguendo that Citibank has not established entitlement to statutory interest on its probate claim such that the interest and the initial balance would exceed the $974.96 payment. That would not affect the contractual interest claim which is not invalid for any reason developed by plaintiff.

**IV.     Conclusion**

Citibank has thus demonstrated that it was entitled to interest under the Card Agreement, and that total of the accrued interest (from February 24, 1999 to December 10, 2000) and the initial account balance exceeds the Hess Estate's $974.96 payment. Apart from juggling figures in this controversy, the common sense of the matter is that Citibank has received less than it bargained for, given the considerable dely in payment of the amount initially due. Therefore, the court concludes

9

that there was no overpayment and no credit balance owing to George Hess' account. Since plaintiff cannot prove an essential element of each of his seven claims – that Citibank wrongfully retained a credit balance owing to George Hess' account – Citibank's motion for summary judgment will be granted.

For the foregoing reasons, it is hereby

ORDERED that defendant Citibank's motion for summary judgment (ECF doc. 10) is GRANTED. The Clerk of the Court is directed to enter judgment in favor of defendant Citibank (South Dakota), N.A. It is further

ORDERED that plaintiff's motion for limited relief from discovery stay (ECF doc. 20) is DENIED. In light of the summary judgment decision, it is further

ORDERED that plaintiff's motion for leave to file motion to enjoin Citibank from destroying evidence (ECF doc. 24) is DENIED as moot.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

October 3, 2005

Kansas City, Missouri